IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MALCOLM DANIELS**,                                Case Number 1:12 CV 001

      Petitioner,                                Judge Christopher A. Boyko

       v.                                REPORT AND RECOMMENDATION

**TERRY TIBBALS, Warden**

      Respondent.                                Magistrate Judge James R. Knepp II

### INTRODUCTION

This is an action initiated by *pro se* Petitioner Malcolm Daniels, a prisoner in state custody,

seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden

Terry Tibbals filed a Return of Writ (Doc. 11) with attached exhibits (Docs. 11-1; 11-2; 11-3; 11-4).

Petitioner failed to respond to the Return of Writ. The district court has jurisdiction over the Petition

under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation

pursuant to Local Rule 72.2(b)(2). (Doc. 5). For the reasons discussed below, the undersigned

recommends the Petition be denied and dismissed with prejudice.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a

state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear

and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C §

2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530

(6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of

appeals based on the state trial record. *Mitzel*, 267 F.3d at 530. The Cuyahoga County Court of

Appeals, Eighth District of Ohio, set forth the following findings of fact:

Mechelle Gooden ("Gooden") testified that, shortly after midnight, on August 9, 2008, she and Kiana Jones ("Jones") went to visit a friend, Jessica Fowler ("Fowler"), at an apartment building located at 7700 Woodland Avenue, in Cleveland, Ohio. As Fowler came out of the apartment building to get into Gooden's car, she stopped to talk to two males sitting in a parked Dodge Intrepid. Rodney Williams ("Williams") was sitting in the driver's seat and Curtis Green ("Green") was sitting in the passenger seat. Green testified that Williams had parked in that location to sell marijuana.

Fowler began talking to Green and then realized that she had gone to school with Williams. Fowler talked with Williams for several minutes, and the two exchanged phone numbers. Fowler then got into Gooden's car and left. Moments later Daniels got into the backseat of Williams's car. Williams showed Daniels a small portion of marijuana. Daniels told Williams he would be right back. Daniels got out of the vehicle and went back into the apartment building.

Approximately three minutes later, Daniels returned and again got into the backseat of the vehicle. Green stated that Daniels demanded everything Williams had and pulled out a gun. Williams looked back at Daniels and reached for the gun, at which point Daniels shot Williams once in the head. Daniels then got out of the vehicle and ran.

Green attempted to drive the vehicle while sitting on the center console. He was able to drive the vehicle from the parking lot to the driveway, at which point he stated that the vehicle broke down and he was unable to drive it further. Green then called Williams's name several times. Green stated that Williams's breathing was labored and he was unable to respond. Williams ultimately died from his wound.

Green panicked and began running down East 79th Street. Green called his cousin, who picked him up and drove him home. When Green arrived at home, he immediately told his mother, Rhonda Frisco Green ("Rhonda"), that Williams had been shot. Green had Williams's cell phone and handed it to Rhonda. Rhonda was able to contact Williams's grandmother and tell her that Williams had been shot.

Later that morning, Rhonda took Green to the police station to make a statement. In his statement, Green stated that he was not in the vehicle when Williams was shot. Green did not mention that Williams had been selling drugs at the time of the shooting.

Green testified that on August 15, 2008, he returned to the police station to make a second statement. In this statement, Green admitted that Williams was selling drugs the night that he was shot, and also stated that he was in the vehicle when Williams was killed. Police then gave Green a photo lineup to determine if he could name a suspect. Green was able to identify Daniels as the individual who shot Williams.

2

On August 17, 2008, Daniels was arrested at a cousin's home in Rochester, New
York. Rochester Police Officer Manuel Ortiz ("Officer Ortiz") testified that, while
Daniels was seated in the back of the patrol car, he spontaneously stated, "[it] was
self-defense, man. I had four pounds of weed, and he had a stack. He was gonna rob
me, so I shot him out of my pocket."

On May 26, 2009, the jury convicted Daniels on all counts.

On June 4, 2009, the trial court held a sentencing hearing. The trial court merged
Counts 1 and 2, aggravated murder, and sentenced Daniels to 25 years to life. The
trial court also merged Counts 3 and 4, aggravated robbery, and sentenced Daniels
to five years of imprisonment, to run concurrent to the sentence on Counts 1 and 2.
In addition, the trial court merged the one and three year firearm specifications on
Counts 1, 2, 3, and 4, for an additional three years of imprisonment to be served
consecutively, for an aggregate sentence of 28 years of imprisonment.

(Doc. 11-1, Tr. 7-10).

## PROCEDURAL BACKGROUND

## State Trial Court

On February 17, 2009, a Cuyahoga County, Ohio grand jury indicted Petitioner on one non-

capital felony Aggravated Murder charge (O.R.C. § 2903.01(A)) with two firearm specifications,

one non-capital felony Aggravated Murder charge (O.R.C. § 2903.01(B)) with two firearm

specifications, one first-degree felony Aggravated Robbery charge (O.R.C. § 2911.01(A)(1)) with

two firearm specifications, one first-degree felony Aggravated Robbery charge (O.R.C. §

2911.01(A)(3)) with two firearm specifications, and one fourth-degree felony carrying a concealed

weapon charge (O.R.C. § 2923.12(A)(2)). (Doc. 11-1, Tr. 18-21).

The offenses were prosecuted in Cuyahoga County Court of Common Pleas as Case No. CR-

09-521106. Petitioner was represented by counsel throughout the trial court proceedings and he

received the state's discovery prior to trial. (Doc. 11-1, Tr. 22). The case was tried by a jury and

prior to deliberations, the jury was given instructions that included an instruction for a lesser

3

included first-degree felony offense of Murder (O.R.C. § 2903.02(A)). (Doc. 11-4,Tr. 198-207).

On May 26, 2009, the jury found Petitioner guilty of all indicted charges and firearm specifications. (Doc. 11-4, Tr. 221-27). For sentencing purposes, the trial court merged all of the firearm specifications, the two Aggravated Murder convictions, and the two Aggravated Robbery convictions. (Doc. 11-4, Tr. 232, 257-58). On June 4, 2009, the trial court sentenced Petitioner to three years in prison for the firearm specification to be served prior to and consecutive with all other sentences, 25 years to life in prison for the Aggravated Murder conviction, five years in prison for the Aggravated Robbery conviction to be served concurrently with the Aggravated Murder sentence, and one year for Carrying a Concealed Weapon to be served concurrent with the Aggravated Murder and Aggravated Robbery sentences. (Doc. 11-4, Tr. 257-58). Petitioner's aggregate prison term is 28 years to life. (Doc. 11-1, Tr. 3).

**<u>Direct Appeal</u>**

On June 29, 2009, Petitioner timely filed a notice of appeal to Ohio's Eighth District Court of Appeals. (Doc. 11-1, Tr. 26). In his direct appeal, Petitioner's appointed counsel raised three assignments of error:

1.  MALCOLM DANIEL'S [*sic*] DUE PROCESS RIGHTS WERE VIOLATED WHEN HIS ALLEGED CONFESSION WAS ADMITTED INTO EVIDENCE.

2.  THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

3.  THE COURT PREJUDICED MALCOLM DANIELS BY NEGLECTING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF AGGRAVATED MURDER.

(Doc. 11-1, Tr. 45). The State filed a brief in opposition. (Doc. 11-1, Tr. 88). On August 19, 2010, the Eighth District Court of Appeals affirmed the judgment of the trial court in Case No. CA 93545.

(Doc. 11-1, Tr. 5-17).

**Ohio Supreme Court**

On September 16, 2010, Petitioner timely filed a *pro se* notice of appeal in the Ohio Supreme Court. (Doc. 11-1,Tr. 100). In his jurisdictional memorandum, Petitioner presented the following errors:

1.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN FAILING TO OBJECT TO TESTIMONY REGARDING AN ALLEGED CONFESSION STATEMENT MADE BY AN APPELLANT AT TRIAL.

2.   APPELLANT'S CONVICTION IS OBTAINED WHEN THE EVIDENCE IS INSUFFICIENT CONTRARY TO HIS DUE PROCESS RIGHTS AND THE RIGHT TO A FAIR TRIAL AS ENVISIONED IN THE OHIO AND UNITED STATES CONSTITUTIONS RESPECTIVELY.

3.   THE TRIAL COURT COMMITTED PLAIN ERROR IN ITS INCORRECT, INCOMPLETE AND INSUFFICIENT JURY INSTRUCTIONS.

(Doc. 11-1, Tr. 102). The state did not file a response. On December 29, 2010, the Ohio Supreme Court denied Petitioner's leave to appeal and dismissed the appeal as not having any substantial constitutional question. (Doc. 11-1, Tr. 132). Petitioner did not file any post-conviction motions.

**FEDERAL HABEAS CORPUS**

On January 3, 2012, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 asserting the following grounds for relief:

**GROUND ONE**: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN FAILING TO OBJECT TO TESTIMONY REGARDING AS ALLEGED CONFESSION STATEMENT MADE BY PETITIONER AT TRIAL.

**Supporting Facts**: Trial counsel never filed a motion to the trial court to suppress an alleged confession statement nor did he object to the testimony at trial of the alleged confession.

**GROUND TWO**: PETITIONER IS DENIED HIS CONSTITUTIONAL RIGHT TO HAVE HIS GUILT PROVEN BEYOND A REASONABLE DOUBT AND HIS

5

RIGHT TO A FAIR TRIAL WHEN THE JURY VERDICTS ARE UNSUPPORTED BY SUFFICIENT EVIDENCE.

**Supporting Facts**: The states case-in-chief rested on a witness who initially failed to call 911, did not report the shooting until the next day after the victims family forced [him] to, lied about being with the victim, lied about the drug deal, and then recanted [his] earlier statement [he] made to the police.

**GROUND THREE**: THE TRIAL COURT COMMITTED PLAIN ERROR IN ITS INCORRECT, INCOMPLETE AND INSUFFICIENT JURY INSTRUCTIONS.

**Supporting Facts**: The [P]etitioner's statement made to the police, that a police officer testified to was made to him by the [P]etitioner supported a jury instruction of a lesser included offense or at a minimum a self defense instruction.

(Doc. 1)

### JURISDICTIONAL ISSUES

Before seeking a federal writ of habeas corpus, a petitioner must exhaust available state remedies, "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To exhaust the available state remedies, a petitioner must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner fails to present a claim to the state courts and no state remedy remains available, he has procedurally defaulted that claim. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Further, the doctrine of procedural default bars federal habeas courts from reviewing federal claims state courts declined to address due to a petitioner's failure to comply with state procedural requirements. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Procedural default occurs when the last state court rendering a decision makes a "plain statement" basing its judgment on a procedural bar.

6

*Harris v. Reed*, 489 U.S. 255, 265 (1989). "The mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)); *see also Coleman v. Thompson*, 501 U.S. 722, 735 (1991) (holding the last state court rendering a reasoned judgment must "clearly and expressly" state its judgment rests on a procedural bar for procedural default to apply). Where a state court is silent as to its reason for denying a claim, the Sixth Circuit applies a presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996) (declining to interpret the state appellate court's silence as a decision on the merits of the petitioner's due process claim and instead assuming the court was enforcing the procedural bar) *Id.* at 203 n.1.

The Sixth Circuit applies a four-part test to determine whether a petitioner's grounds for relief are procedurally defaulted:

> 1) whether the petitioner failed to comply with an applicable state procedural rule;
>
> 2) whether the state courts actually enforced the state procedural sanction;
>
> 3) whether the procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review;
>
> 4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice".

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)).

Petitioner's first ground for relief is an ineffective assistance of trial counsel claim. (Doc. 1, at 5). Petitioner alleges his trial counsel was ineffective because he did not file a motion to suppress his incriminating statement made to law enforcement or object to trial testimony regarding the same.

7

(Doc. 1, at 5). However, despite having different counsel for appellate proceedings, Petitioner did not raise an ineffective assistance of trial counsel claim in his direct appeal to Ohio's Eight District Court of Appeals. (Doc. 11-1, Tr. 42). Although Petitioner challenged his incriminating statements in the state appellate court, his arguments were based on other legal theories – due process, fundamental fairness, and plain error. (Doc. 11-1, Tr. 42). After the state appellate court affirmed Petitioner's convictions and sentences, he tried to raise an ineffective assistance of trial counsel claim in the Ohio Supreme Court. (Doc. 11-1, Tr. 102). Because this claim was not raised in the state court of appeals, it was barred by the Ohio rule of res judicata. *Lott v. Coyle*, 261 F.3d 594, 611–612 (6th Cir.2001), *cert. denied*, 534 U.S. 1147 (2002); *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105–106 (1967) (syllabus, ¶ 9). In effect, res judicata barred Petitioner from litigating an issue that could have been raised on direct appeal. *Perry*, 10 Ohio St.2d at 180, 226 N.E.2d at 108. Although Petitioner attempted to raise this claim in his appeal to the Supreme Court of Ohio (Doc. 11-1, Tr. 102), that court will not consider a constitutional question which was not raised and argued in the lower courts. *See Leroy v. Marshall,* 757 F.2d 94, 99 (6th Cir. 1985); *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *see also* Ohio Const. art. IV, § 2(B)(2); *State v. Jones*, 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied*, 383 U.S. 918, 951 (1966). Therefore, for purposes of federal habeas review, Petitioner has waived his ineffective assistance of counsel claim alleged in his first ground unless he can show cause and prejudice for his default or that failure to consider the claim will result in a fundamental miscarriage of justice, which he has not done. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

8

Likewise, Petitioner's second ground for relief is procedurally barred because he did not present it on direct appeal to the Ohio Eighth District Court of Appeals. In his direct appeal, Petitioner challenged his convictions arguing they were against the manifest weight of the evidence, which is separate and distinct from an evidence sufficiency claim. After the appellate court affirmed Petitioner's convictions and sentences, he raised an evidence sufficiency claim to the Ohio Supreme Court. Again, since Petitioner did not raise this claim his direct appeal, the Ohio Supreme Court's denial of his appeal is presumed to be dismissed due to Petitioner's failure to present the claim to the Eighth District Court of Appeals. *Simpson*, 94 F.3d at 203. Since Petitioner failed to show cause and prejudice for his default or that failure to consider the claim will result in a fundamental miscarriage of justice, his second ground for relief is procedurally barred from federal habeas review. *See Coleman,* 501 U.S. at 750; *Murray,* 477 U.S. at 485; *Engle,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner's third ground for relief pertains to the absence of a lesser included offense in the jury instructions. (Doc. 1, at 8). When Petitioner raised a similar issue in his direct appeal in state appellate court, he did not fairly present his claim as a federal constitutional right violation. Instead, Petitioner relied solely on state law authority and interpretations. If a state defendant fails to fairly present a federal constitutional claim to the state courts, he waives the claim for the purpose of federal habeas review. *Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989). This fair presentment requirement is strictly followed in the Sixth Circuit, to the point where catch-all allegations, such as a defendant claiming he was denied his constitutional right to a fair trial, when supported only by state law, does not fairly apprise the state court of a specific constitutional theory. *Weaver*, 888 F.3d at 1099.  Likewise, the phrases "fair trial" and "due process", by themselves, "do not call to

9

mind a specific right protected by the Constitution." *Weaver*, 888 F.3d at 1099 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984)).

Because Petitioner failed to raise a constitutional violation in state court, he did not fairly presented his third asserted ground for relief to the state courts and this claim should be dismissed with prejudice.

**CONCLUSION AND RECOMMENDATION**

Following review, the undersigned recommends the Court find Petitioner's claims procedurally defaulted and waived. Since there has been no demonstration of cause and prejudice, the Petition should be denied and dismissed with prejudice.


          s/James R. Knepp II
         United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

10